**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

JACK CHRISTIAN WOODY,      )
                                )
          Plaintiff,        )
                                )
   vs.                       )     No. 2:21-cv-03303-DCN-MGB
                                )
CITY OF ISLE OF PALMS; JOSHUA  )
PHILLIPS, *in his official and individual* )        **ORDER**
*capacities*; SGT. MATTHEW STOREN, )
*in his official and individual capacities*; )
J. SWAIN; and JOHN DOE, *in his*   )
*official and individual capacities,*    )
                                )
         Defendants.     )
_____)

This matter is before the court on Magistrate Judge Mary Gordon Baker's report and recommendation ("R&R"), ECF No. 57, that the court grant in part and deny in part defendants City of Isle of Palms (the "City"), John Doe ("Doe"), Joshua Phillips ("Phillips"), Sgt. Matthew Storen ("Sgt. Storen"), and Captain J. Swain's ("Capt. Swain") (collectively, "defendants") motion for summary judgment, ECF No. 44. For the reasons set forth below, the court adopts the R&R and grants in part and denies in part the motion for summary judgment.

## I.  BACKGROUND

The R&R ably recites the facts as stated in the complaint, and the parties do not object to the R&R's recitation thereof. Therefore, the court will only briefly summarize material facts as they appear in the R&R for the purpose of aiding an understanding of the court's legal analysis.

1

This case arises from an alleged use of excessive force during plaintiff Jack Christian Woody's ("Woody") arrest on December 27, 2019. ECF No. 21, 2d Amend. Compl.; ECF Nos. 44; 50. According to Woody, the arrest occurred at a local bar and grill known as The Windjammer located on the Isle of Palms after he was escorted out of the building at approximately 10:54 P.M. 2d Amend. Compl. ¶¶ 33–34. Around that time, Phillips and Sgt. Storen (together, the "Officers") were dispatched to The Windjammer following a report that Woody had entered The Windjammer in violation of a trespass order issued in 2018.[1] ECF No. 44 at 2. Video evidence submitted by the parties, ECF Nos. 44-1; 44-2; 50-1; 50-10,[2] depicts the subsequent events as follows:

The Officers arrived at The Windjammer as an employee of The Windjammer, Matthew Flaquer ("Mr. Flaquer"), escorted Woody out. ECF Nos. 44, 44-1, 44-2, 50, 50-1. As Woody exited, he saw the Officers waiting for him and asked, "What's up man?" ECF Nos. 44-1 at 03:45, 50-10 at 00:01. Phillips responded by instructing Woody to put his hands behind his back. Woody then stated, "It's been over a year."[3] Phillips replied, "It doesn't matter, it's indefinite." After a bit of back and forth, Phillips reached for Woody's arm in an attempt to place handcuffs on him. Woody pulled his arm away and stated, "Come on, guys." Phillips then moved Woody to face the wall of the building.

---

[1] Defendants Phillips and Sgt. Storen "had personal knowledge of [Woody] previously being placed on trespass from The Windjammer" because they handled the 2018 incident giving rise to the trespass order. ECF No. 44 at 2.

[2] These exhibits contain the video footage from that night, December 27, 2019, from the body-worn cameras of Phillips, ECF Nos. 44-1 and 50-1, and Sgt. Storen, ECF Nos. 44-2 and 50-10. The court notes that the video footage from Sgt. Storen's body-worn camera is significantly darker than Phillips and therefore more difficult to decipher. Unless the court states otherwise or cites to another source, the remaining facts gleaned from that night are pulled from the video footage.

[3] Woody maintains that he believed the 2018 trespass order prohibiting him from entering The Windjammer expired after one year. ECF No. 50.

Woody fidgeted, shifting away from Phillips. Phillips told him to stop. Sgt. Storen

stepped in to help, holding Woody against the wall with one hand while Phillips

handcuffed Woody.

After the officers handcuffed Woody, they turned him around and told him to,

"come on." In response, Woody repeated his assertion that "they told [him] a year."

Phillips said, "I don't care what they told you." Woody replied, "You guys are being

ridiculous." Phillips responded by telling Woody he was resisting arrest. Woody then

repeatedly asked what he was under arrest for, and one of the officers responded that

Woody was under arrest for disorderly conduct.

The officers then attempted to lead Woody down the stairs of The Windjammer,

into the parking lot. At this point, Woody was moving around, and the officers appeared

to have some difficulty leading him down the stairs. Halfway down the stairs, Woody

bumped into a railing that surrounded the staircase landing. A struggle ensued.[4] After a

few seconds, the officers laid Woody down on the stairs with his back to the stairs and

held him there by his chest, at which point Woody said, "you guys are so fucked,"

multiple times. ECF No. 44-1 at 6:02–19. Sgt. Storen searched Woody and emptied his

pockets. The officers had a brief conversation with Woody about the trespass order and

Woody's belief that it expired after one year. After this conversation, the officers told

Woody to get up and, thereafter, led him down the remaining stairs without issue.

While walking down the remaining stairs, Woody asked the officers to pull up the

trespass order, presumably to see if it had expired. They declined and told Woody he was

under arrest for disorderly conduct and resisting arrest. Woody continued walking with

---

[4] The video evidence depicting this struggle is not clear. ECF Nos. 44-1; 50-10.

the officers until they reached their vehicle. When they got to the car, Woody stopped and told the officers not to take him to North Charleston.[5] At that point, Sgt. Storen told Woody to stop resisting and pushed him into the side of the vehicle. The officers then struggled with Woody.[6] A few seconds into the struggle, the officers opened the door of the police car and told Woody to "get in the car." After another few seconds, Woody remained outside of the car. The officers again told Woody to get in the car. After about seven seconds, Sgt. Storen told Woody he was "about to get tased" and tased him. Woody yelled out in pain and got into the car. Once Woody was secured in the police vehicle, the officers recorded Woody's information and talked with Mr. Flaquer, who described what led him to call the police. When Phillips got back into the police car, Woody requested an ambulance. After some discussion, Phillips transported Woody to East Cooper Hospital Medical Center before bringing him to the Charleston County Detention Center. Woody claims he suffered physical injuries as well as mental pain and suffering because of the events that night. This lawsuit followed.

On September 28, 2021, Woody filed his complaint in the Charleston County Court of Common Pleas alleging twenty-two causes of action seeking nominal, actual, special, compensatory, and punitive damages in amounts to be determined by a jury. ECF No. 1-1, Compl. Defendants Isle of Palms Police Department, the City, Phillips, and Sgt. Storen removed to federal court on October 12, 2021, under federal question jurisdiction, ECF No. 1. Pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B) and Local Civil

---

[5] Woody objects to this characterization and instead requests, especially since all inferences are made in favor of the non-moving party, that the court find that Woody "asked the officers not to take him to jail." ECF No. 60 at 4.

[6] The video evidence depicting this struggle is not clear. ECF Nos. 44-1, 50-10.

Rules 73.02(B)(2)(g) (D.S.C.), all pretrial proceedings in this case were referred to

Magistrate Judge Baker.  On January 3, 2022, Woody filed the first amended complaint,

which added as defendants Kevin Cornett, Capt. Swain, Kim Usry, K. Thompson, Chad

King, and Doe.[7]  ECF No. 17, 1st Amend. Compl.  On January 14, 2022, Woody filed the

second amended complaint, now the operative complaint, against all defendants, which

alleged six causes of action.[8]  ECF No. 21, 2d Amend. Compl.  On February 24, 2023,

defendants filed a motion for summary judgment.  ECF No. 44.  On March 28, 2023,

Woody responded in opposition, ECF No. 50, to which defendants replied on April 11,

2023, ECF No. 53.  On June 22, 2023, Magistrate Judge Baker issued a report and

recommendation that defendants' motion for summary judgment be granted in part and

denied in part.  ECF No. 57, R&R.  On July 5, 2023, Phillips and Sgt. Storen objected to

---

[7] Defendant Isle of Palms Police Department was terminated as a defendant on February 17, 2022, because defense counsel acknowledged the City was the proper entity to respond to claims brought against its local Police Department.  ECF Nos. 27, 28. Defendants Chief of Police Kevin Cornett ("COP Cornett"), Former Interim Chief of Police Chief Kim Usry ("Interim COP Usry"), Sgt. Kraig Thompson ("Sgt. Thompson"), Sgt. Chad King ("Sgt. King"), and Sgt. Sharon Baldrick ("Sgt. Baldrick") were terminated as defendants on September 8, 2022, upon the court's order granting in part and denying in part defendants' motion to dismiss.  ECF Nos. 40, 41.

[8] Count 1 alleges excessive force by Phillips and Sgt. Storen in violation of the Fourth Amendment of the United States Constitution.  2d Amend. Compl. ¶¶ 85–116. Count 2 alleges excessive force in violation of the United States Constitution against Capt. Swain pursuant to supervisory liability.  Id. ¶¶ 117–36.  Counts 3 and 4 allege supervisory liability against Sgt. Thompson, Sgt. King, Sgt. Baldrick, Doe, Interim COP Usry, and COP Cornett of whom only Doe remains a defendant at the motion for summary judgment stage.  Id. ¶¶ 137–40; ECF No. 40.  Count 5 is brought against the City and alleges custom, policy, or usage of failing to properly respond to excessive use of force by its police officers.  Id. ¶¶ 141–61.  Count 6 is brought against Phillips and Sgt. Storen and claims both committed battery by applying the taser, the wrist lock, and the jugular notches against Woody and that Sgt. Storen committed assault by telling Woody he was going to be tased, all in violation of South Carolina state law.  Id. ¶¶ 165–69.

the R&R.  ECF No. 59.  On July 6, 2023, Woody objected to the R&R.  ECF No. 60.  As

such, the motion has been fully briefed and is ripe for review.

## II.  STANDARD

### A.  Order on R&R

This court is charged with conducting a de novo review of any portion of the

magistrate judge's R&R to which specific, written objections are made.  28 U.S.C.

§ 636(b)(1).  A party's failure to object is accepted as agreement with the conclusions of

the magistrate judge.  See Thomas v. Arn, 474 U.S. 140, 149–50 (1985).  The

recommendation of the magistrate judge carries no presumptive weight, and the

responsibility to make a final determination rests with this court.  Mathews v. Weber, 423

U.S. 261, 270–71 (1976).  The court may "accept, reject, or modify, in whole or in part,

the findings or recommendations made by the magistrate judge . . . or recommit the

matter to the magistrate judge with instructions."  28 U.S.C. § 636(b)(1).  The court is

charged with making a de novo determination of any portion of the R&R to which a

specific objection is made.  Id.

However, in the absence of a timely filed, specific objection, the court reviews the

R&R only for clear error.  Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310,

315 (4th Cir. 2005).  Furthermore, "[a] party's general objections are not sufficient to

challenge a magistrate judge's findings."  Greene v. Quest Diagnostics Clinical Lab'ys,

Inc., 455 F. Supp. 2d 483, 488 (D.S.C. 2006) (citation omitted).  When a party's

objections are directed to strictly legal issues "and no factual issues are challenged, de

novo review of the record may be dispensed with."  Orpiano v. Johnson, 687 F.2d 44, 47

(4th Cir. 1982) (citation omitted).  Analogously, de novo review is unnecessary when a

party makes general and conclusory objections without directing the court's attention to a specific error in a magistrate judge's proposed findings.  Id.

### B. Summary Judgment

Summary judgment shall be granted if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Id. at 248.  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Id. at 249.  The court should view the evidence in the light most favorable to the non-moving party and draw all inferences in its favor.  Id. at 255.

### III.  DISCUSSION

The R&R recommended granting the motion and dismissing all supervisory liability claims brought against Capt. Swain and John Doe.  R&R at 15–17.  The R&R also recommended granting summary judgment on the claims against the City for two reasons: (1) the municipality may not be held liable on a respondeat superior theory of

liability and (2) Woody has produced no evidence that the identified Response to Resistance policy was unconstitutional or even problematic, nor has Woody offered any evidence that similar constitutional violations were a widespread practice that is so engrained it constitutes a custom.  Id. at 17–19.  The R&R further recommended granting summary judgment on the § 1983 claims brought against Sgt. Storen and Phillips in their official capacities as duplicative of the claims against the City.  Id. at 6.  The magistrate judge recommended denying the motion for summary judgment for the individual capacity excessive force claims against Sgt. Storen and Phillips, as well as for the state law claims of assault and battery brought against Sgt. Storen and the battery claim brought against Phillips.  Id. at 6–15.  Finally, the R&R recommended denying Woody's request for declaratory and injunctive relief.  Id. at 19 n.10.  The denial is recommended because Woody merely seeks a declaration from the court that defendants' past actions violated his rights which is not a permissible request for declaratory relief.  Id.  Similarly, the R&R recommended denying the sought injunctive relief because Woody has not shown any real or immediate threat that he will be wronged again—a likelihood of substantial and immediate irreparable injury—and in any event, the injunctive relief was tied to Woody's claim against the City, which the R&R found to lack merit.  Id.

Neither party objects to the R&R's recommendation to grant summary judgment as to the claims brought against Capt. Swain and John Doe.  R&R at 15–17.  In the absence of a timely filed, specific objection, the court reviews the R&R only for clear error.  Diamond, 416 F.3d at 315.  A review of the record for clear error indicates that the R&R accurately summarized this case and the applicable law.  Accordingly, the court adopts the magistrate judge's R&R as to Capt. Swain and John Doe, and grants

defendants' motion for summary judgment on those claims. However, both Woody and the defendants object to the magistrate judge's remaining recommendations and the court summarizes those objections in turn before performing de novo review of those recommendations.

Defendants object to the R&R's recommended denial of the motion for summary judgment as to the § 1983 excessive force claim brought against Sgt. Storen and Phillips in their individual capacities, and object to the R&R's recommended denial of the motion for summary judgment as to the state court claims. ECF No. 59. The basis of each of these objections is defendants' arguments that the use of force on the stairs, id. at 2–5, and the use of the taser were objectively reasonable as a matter of law, id. at 5–10.

Woody objects to the R&R's recommendation that summary judgment be granted on all claims brought against the City, and to the recommended dismissal of all claims brought against Sgt. Storen and Phillips in their official capacities as duplicative of the claim brought against the City. ECF No. 60 at 2. He also objects to the R&R's suggested dispensation in a footnote of the sought equitable relief he seeks. Id. at 3 (citing R&R at 19 n.10). He specifically argues that he has met the standard showing that there is a likelihood of experiencing a similar constitutional violation in the future such that these claims should survive summary judgment. Id. at 3–4. The court considers the parties' objections in turn.

### A. Phillips and Sgt. Storen

The court begins by examining Woody's § 1983 excessive force claims against Phillips and Sgt. Storen before turning to his state law assault and battery claims as asserted against Phillips and Sgt. Storen.

### 1.  § 1983

The magistrate judge recommended that Woody's § 1983 excessive force claims against Phillips and Sgt. Storen in their individual capacities should survive summary judgment. R&R at 6.  The excessive force claims center around two events: (1) Phillips and Sgt. Storen purportedly throwing Woody down onto the steps, and (2) Sgt. Storen tasing him.  Id. at 7.  In his response in opposition, Woody contended that the Officers presented nothing more than disputed factual allegations in support of their request and the magistrate judge agreed with that characterization.  Id.  Neither party objected to the R&R's recommendation that the court deny the motion for summary judgment to the extent it is premised solely on the officers' entitlement to qualified immunity—a recommendation for which this court finds no clear error and adopts—such that the undersigned's consideration of the § 1983 claim exclusively considers whether the use of force was objectively reasonable.  See R&R at 12–15; Diamond, 416 F.3d at 315.

A civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief."  City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707 (1999).  To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988).

Both parties analyze this claim solely under the Fourth Amendment.  The Fourth Amendment prohibits unreasonable seizures which effectively bars police officers from using excessive force to seize a free citizen.  Jones v. Buchanan, 325 F.3d 520, 527 (4th Cir. 2003) (citing Graham v. Connor, 490 U.S. 386, 395 (1989)).  Determining whether

an officer used excessive force to conduct a seizure is based on an objective reasonableness standard.  Id.  The court considers three factors when applying the standard: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting or attempting to evade arrest by flight.  Graham, 490 U.S. at 396.  That determination must be "judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 397.  The issue is, "ultimately, . . . 'whether the totality of the circumstances justifie[s] a particular sort of . . . seizure.'" Smith v. Ray, 781 F.3d 95, 101 (4th Cir. 2015) (quoting Tennessee v. Garner, 471 U.S. 1, 8–9 (1985)).  The Fourth Circuit has also stated that the severity of injury a plaintiff suffered is relevant to an excessive force analysis in addition to the Graham factors.  See Buchanan, 325 F.3d at 527.  The court considers whether Woody has met his burden to prove those elements sufficient to survive a motion for summary judgment for the use of force on the stairs and the use of the taser.

### a.  Use of Force on the Stairs

To start, the R&R noted that the court cannot determine whether the force used by Phillips and Sgt. Storen was justified without making impermissible credibility determinations.  Id. at 8.  For example, the force used on the stairs may have been Woody losing his balance or it could have been Woody flailing around and becoming dead weight in an effort to resist the officers' escort.  Id.  The video footage provides no clarity on these questions.  Id. at 9–11.  Phillips and Sgt. Storen disagree and argue that the video footage clearly depicts that a struggle occurred between Woody, Phillips, and Sgt. Storen: footage shows that Woody "braced his leg and began to throw himself into the

11

officers," ECF No. 59 at 4 (citing ECF No. 44-1 at 5:39); shows that Phillips and Sgt. Storen twice instructed Woody to get on the ground to which he responded, "fuck off," id. (citing ECF No. 44-2 at 1:57); and illustrates that the struggle lasted more than twenty seconds from the top of the stairs until the parties fell onto the stairs where the officers were audibly out of breath while Woody repeatedly stated, "you guys are fucked," id. (citing ECF No. 44-2 at 2:16).  As such, based on the video footage alone, the Officers disagree with the magistrate judge and contend that no reasonable jury could believe Woody's version of the story.  Id.

The Officers also disagree with the magistrate judge on the analysis of the Graham factors.  See id. at 4–5; R&R at 9.  The magistrate judge concluded that the Graham balancing analysis precludes granting summary judgment to defendants on this claim because: first, the evidence indicates that Woody had committed, at most, a misdemeanor before the Officers brought him to the ground; second and third, it was unclear whether Woody posed an immediate threat because it is unclear whether he was actively resisting and/or posing a safety threat to the officers on the stairwell.  Id.  The Officers contend that the second and third Graham balancing factors weigh in favor of granting summary judgment because the body camera footage corroborates that Woody was actively resisting Sgt. Storen and Phillips at the time that they brought Woody down at the stairs, meaning he posed an immediate threat to them.  ECF No. 59 at 4. Importantly, the Officers emphasize that a physical struggle with an actively resisting subject in the middle of a staircase "is an inherently dangerous circumstance that poses a threat to officers," and the Officers managed to bring Woody down without any alleged injury more serious than treatment with a Band-Aid to Woody's finger at the hospital.  Id.

at 4–5.  Thus, the Officers contend that the takedown was not disproportionate to the threat posed by Woody and resulted in essentially no injury which means it was objectively reasonable as a matter of law.  Id.

On a motion for summary judgment, the court views the facts in the light most favorable to the non-moving party to determine whether the officers' conduct violated a federal right.  See Ray, 781 F.3d at 100.  A claim that a police officer employed excessive force is analyzed under the Fourth Amendment under an "objective reasonableness" standard.  Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).  The officer's actions do not amount to excessive force if they "are 'objectively reasonable' in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation."  Graham, 490 U.S. at 397.  "In considering the reasonableness of an officer's actions, we must consider the facts at the moment that the challenged force was employed."  Ray, 781 F.3d at 101 (citing Henry, 652 F.3d at 531).  The alleged facts in the light most favorable to Woody indicate that he lost his balance and thereafter the officers threw him to the ground.  See R&R at 8.  Thus, viewed in the light most favorable to Woody, there is a genuine dispute of material fact as to whether Phillips and Sgt. Storen impermissibly used excessive force in the takedown.

Defendants ask the court to review the body camera footage to find that Woody's facts are clearly contradicted by the video evidence.  ECF No. 59 at 3.  Certainly, "when a video 'quite clearly contradicts the version of the story told by [the plaintiff] . . . so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.'"  Witt v. W.Va. State Police, 633 F.3d 272, 276 (4th Cir. 2011) (quoting Scott v. Harris, 550 U.S. 372, 378 (2007)).  Yet,

as the magistrate judge noted repeatedly, the body cam footage here is not always clear, and is unclear at the time of the takedown, such that the court should not disregard Woody's version of the facts in favor of the camera footage.  See id.; R&R at 3; ECF No. 44-1 at 5:35–56.  The magistrate judge's observation of a "struggle" is not dispositive and is insufficient to set aside the facts viewed in the light most favorable to Woody— particularly given that the R&R includes footnotes clarifying that "[t]he video evidence depicting this struggle is not clear."  See R&R at 3 & n.3–4; ECF No. 59 at 3–4.  Stated differently, the body camera footage standing alone does not clearly contradict either party's version of the story.  Thus, a genuine dispute of material fact exists as to whether excessive force was used in the takedown of Woody on the stairs.  Consequently, the court adopts the magistrate judge's recommendation and denies defendants' motion for summary judgment on this claim.

### b.  Use of Taser

Similarly, the R&R noted that to grant summary judgment on the taser use the court would need to find that Woody posed an immediate threat to Sgt. Storen's safety at the time he tased Woody.  R&R at 10–11.  For Woody to pose an immediate threat, the court would be required to find that Woody "was kicking [Sgt.] Storen in the shins" and that Woody "was attempting to access items from [Sgt.] Storen's duty belt (such as his taser, pepper spray, baton, knife, and firearm)."  Id.  The R&R explained it could not conclude that Sgt. Storen had met this burden because Woody disputes kicking Sgt. Storen or attempting to access his belt and the incident report similarly fails to describe Woody kicking or attempting to access the belt—thus, the magistrate judge concluded that there is a genuine dispute of a material fact as to whether Woody posed an immediate

14

threat to Sgt. Storen's safety.  Id.  Again, Sgt. Storen objects.  ECF No. 59 at 5–10.  First, he reiterates his argument that Woody's deposition testimony—where he admitted he did not know which defendant used a taser during the arrest—should bar him from advancing his claims because without knowledge as to the identity of the person who violated his rights, Woody cannot prevail on his excessive force claim.[9]  Id. at 5–6.  Second, Sgt. Storen contends that based on the body camera footage, a reasonable jury could not conclude that he tased Woody in retaliation for Woody insulting him because Sgt. Storen drew his taser prior to Woody calling him a "fatass" or otherwise insulting Sgt. Storen. Id. at 8.

The defendants again disagree with the magistrate judge on the analysis of the Graham factors.  See id. at 5–10; R&R at 10–12.  The magistrate judge concluded that the Graham balancing analysis weighed in Woody's favor: first, as noted, Woody committed nothing more than a misdemeanor before he was tasered; second, genuine issues of fact exist as to whether Woody posed an immediate threat to Sgt. Storen's safety at the time he was tased; and third, it is unclear whether Woody was actively resisting at the time he was tased.  R&R at 10–11.  Thus, the R&R indicated that the magistrate judge "cannot find that [Sgt.] Storen's decision to deploy his taser was objectively reasonable as a matter of law."  Id. at 11.

---

[9] The court notes that the Officers provide no caselaw to support this argument. See ECF No. 59 at 5–6.  An initial review of caselaw reveals the opposite to be the norm; affirmatively identifying which of the two identified officers used force against him is not essential to Woody's claim.  See, e.g., Lester v. City of Gilbert, 85 F. Supp. 3d 851, 858 (S.D.W. Va. 2015) (citing Sanchez v. City of Chicago, 700 F.3d 919, 926 n.3 (7th Cir. 2012)).

In their objections, defendants explain that objective evidence shows that the second and third Graham factors weigh in Sgt. Storen's favor such that his use of a taser was objectively reasonable as a matter of law. ECF No. 59 at 6–10. Regarding the second factor, the Officers reiterate that they previously presented evidence of their knowledge that Woody was violent on at least one occasion prior to this incident, which modifies the objective reasonableness standard. Id. at 6–7; see also ECF No. 44-1 at 00:04 (noting on the drive to The Windjammer that "[Woody's] on trespass notice so he's been known to be violent."). Further, Sgt. Storen explains that the body camera footage shows that he drew his taser prior to Woody's audible insults and the Officers submit a lightened screengrab of the body camera footage in support of their objections. Id. at 8; see ECF No. 59-1. Thus, defendants contend that a reasonable officer detaining a person known to be violent who is kicking the officers and attempts to grab for weapons on the duty belt would certainly perceive a threat justifying the use of a taser such that the second factor weighs in favor of Sgt. Storen. Id. Regarding the third factor, defendants contend that the body camera footage shows that Woody continued to actively resist arrest as shown by him throwing his weight around and the Officers' labored breathing audible on the camera footage. Id. at 9. Moreover, the Officers emphasize that they applied only the minimum amount of force necessary for Woody's arrest. Id. They say they gradually increased the force used as lesser levels proved insufficient and Woody's level of resistance escalated by ignoring the officers' commands to get in the car, by physically resisting, and by arguing and insulting the officers. Id. Woody was not injured beyond the noted Band-Aid to the finger. Id. at 10. Thus, defendants contend

that the third factor weighs in their favor and when combined with the second factor, Sgt. Storen's use of a taser was objectively reasonable.  Id.

Deploying a taser is a serious use of force.  The weapon is designed to "caus[e] . . . excruciating pain," Cavanaugh v. Woods Cross City, 625 F.3d 661, 665 (10th Cir. 2010), and application can burn a subject's flesh, see Orem v. Rephann, 523 F.3d 442, 447–48 (4th Cir. 2008), abrogated on other grounds by Wilkins v. Gaddy, 559 U.S. 34, 37 (2010).  The Fourth Circuit has observed that "a taser 'inflicts a painful and frightening blow.'"  Armstrong ex rel. Armstrong v. Village of Pinehurst, 810 F.3d 892, 902 (4th Cir. 2016) (quoting Orem, 523 F.3d at 448).  "Force that imposes serious consequences requires significant circumscription."  Id. at 903.  Thus, Fourth Circuit precedent "makes clear that tasers are proportional force only when deployed in response to a situation in which a reasonable officer would perceive some immediate danger that could be mitigated by using the taser."  Id. (emphasis in original).

On a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party.  Anderson, 477 U.S. at 255.  Woody denies the Officers' allegations that he was actively resisting arrest or attempting to access items from Sgt. Storen's duty belt or even that he was kicking Sgt. Storen in the shins.  ECF No. 50-9, Woody Dep. at 99:3–23.  The video evidence depicting the moments leading up to Sgt. Storen tasing Woody is largely blacked out and blurred.  ECF No. 44-1 at 8:20–35; ECF No. 50-10 at 4:20–46.  The Officers' additional submission of a screengrab of Phillips' body camera footage, lightened to improve the visibility of the photo, does not "quite clearly contradict[]" Woody's story such that the court may rely on contradictory video footage rather than the described facts provided by Woody.  See ECF

No. 59 at 8 (citing ECF No. 44-1 at 8:28); ECF No. 59-1; see also Witt, 633 F.3d at 276. Thus, the court agrees with the magistrate judge and finds that there exists a genuine dispute of material fact as to whether Sgt. Storen used excessive force when he tased Woody.

The court finds that there are genuine disputes of material facts such that a reasonable jury could find for either party. Consequently, the court adopts the R&R and denies the defendants' motion for summary judgment on Woody's § 1983 claims against Phillips and Sgt. Storen in their individual capacities.[10]

### 2. State Law Claims: Assault and Battery

The South Carolina Tort Claims Act ("SCTCA") provides that in general an employee of a governmental entity who commits a tort while acting within the scope of his official duty is not liable and the plaintiff must sue the governmental agency itself. Newkirk v. Enzor, 240 F. Supp. 3d 426, 436 (D.S.C. 2017) (referencing S.C. Code Ann. § 15-78-70(a)). "However, if the plaintiff proves that the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude, then the governmental agency is not

---

[10] Neither party objects to the R&R's recommendation that Sgt. Storen and Phillips's motion for summary judgment be denied as to qualified immunity as a matter of law. R&R at 13–17. In the absence of a timely filed, specific objection, the court reviews the R&R only for clear error. Diamond, 416 F.3d at 315. A review of the record for clear error indicates that the R&R accurately summarized this case and the applicable law. Accordingly, the court adopts the magistrate judge's R&R which noted that should this court determine that a reasonably jury could find Sgt. Storen and/or Phillips used excessive force in violation of the Fourth Amendment, such a use violates clearly established law such that the officers would not be entitled to qualified immunity. R&R at 13–15 (citing, inter alia, Armstrong, 810 F.3d at 909). Thus, the court denies defendants' motion for summary judgment on the basis of qualified immunity as to Woody's § 1983 claims.

liable, and the employee is personally liable." Id. (internal quotation marks and citations omitted) (referencing S.C. Code Ann. § 15-78-70(b)).

The magistrate judge explained that for the reasons discussed above, a jury could find that Phillips and Sgt. Storen acted with actual malice or intent to harm when using force against Woody. R&R at 14. Thus, the officers are not necessarily immune from liability under S.C. Code. Ann. § 15-78-70 because if a jury finds for Woody, the Officers' actions would constitute an exception to the general rule which provides that an employee of a governmental entity who commits a tort while acting within the scope of his official duty is not liable. Id. As such, reasonable minds could differ as to whether the officers are entitled to immunity under the SCTCA. Id. Sgt. Storen and Phillips explain that for the same reasons provided above, their use of force was objectively reasonable such that Woody's state law claims of assault and battery should be dismissed. ECF No. 59 at 10.

Under South Carolina law, "an assault occurs when a person has been placed in reasonable fear of bodily harm by the conduct of the defendant, and a battery is the actual infliction of any unlawful, unauthorized violence on the person of another, irrespective of its degree." Jones by Robinson v. Winn-Dixie Greenville, Inc., 456 S.E.2d 429, 432 (S.C. Ct. App. 1995). "[A] law enforcement officer who uses reasonable force in effecting a lawful arrest is not liable for assault or battery. However, if the officer uses excessive force, or 'force greater than is reasonably necessary under the circumstances,' the officer may be liable for assault or battery." McCoy v. City of Columbia, 929 F. Supp. 2d 541, 567 (D.S.C. 2013) (internal citations omitted). Because Woody potentially has a viable § 1983 excessive force claim against the Officers, there is a genuine issue of

material fact as to whether either officer is liable under the SCTCA for the alleged assault by Sgt. Storen and/or battery by Sgt. Storen and Phillips.  See Barfield v. Kershaw Cnty. Sheriff's Off., 638 F. App'x 196, 201–03 (4th Cir. 2016) ("[I]n the case of a viable excessive force claim under § 1983, [the plaintiff's] SCTCA battery claim against the KCSO also survives [summary judgment].").  Consequently, the court adopts the R&R as to the state court claims and denies defendants' motion for summary judgment as to those claims.

### B. City of Isle of Palms

Municipalities and other local government units may be held liable under § 1983. Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 690 (1978).  But "a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."  Id. at 691; see Connick v. Thompson, 563 U.S. 51, 60 (2011) (holding that local governments "are not vicariously liable under § 1983 for their employees' actions").  Thus, a plaintiff who seeks to assert a § 1983 claim against a municipality or county is obliged to "to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."  Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403 (1997) (citing Monell, 436 U.S. at 694).  As interpreted by the Fourth Circuit, a "policy or custom" can exist in four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (quoting Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999)).

The R&R recommended that summary judgment be granted as to Woody's claim against the City because Woody has provided no evidence that would support a § 1983 municipal liability claim against the City.  R&R at 17–18.  First, Woody has not alleged any constitutionally offensive actions of employees taken in furtherance of some municipal policy or custom because he does not argue that the sole policy he identified—the City's "Response to Resistance" policy—is unconstitutional or even problematic, and the magistrate judge's independent review of the policy "uncovered no issues."  Id. Second, Woody mentions no other incidents of constitutional violations by municipal employees meaning the court cannot begin to infer that the City employed "a widespread practice that it so engrained it constitutes a custom."  Id.  Third, Woody provides no evidence—and the record similarly contains no evidence—that indicates the City was on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights.  Id. at 19.  Thus, the magistrate judge recommended that the court find that Woody's Monell claim against the City fails as a matter of law.

Woody objects to the R&R's conclusion—specifically to the magistrate judge's second and third conclusions—and contends that he has provided "extensive evidence" "that the Isle of Palms Police Department is filled with officers who think active resistance, per se, justifies taser use."[11]  ECF No. 60 at 3 (referencing ECF No. 50 at 9–

---

[11] Woody appears to combine his objections to the R&R's recommendation as to his Monell claim with his objections to the R&R's recommendation that there is no evidence before the court that Woody has shown a likelihood of experiencing a similar constitutional violation.  ECF No. 60 at 3–4.  The R&R analyzed the Monell claim and concluded there was insufficient evidence to support a Monell violation by the City.  R&R at 17–19.  In a footnote within the Monell analysis, the magistrate judge also recommended that Woody's request for declaratory and injunctive relief be denied for

12, 30).  He emphasizes that the City's taser instructors think tasing is permissible in response to any active resistance, "which includes gently bringing one's own arm away when an officer reaches for it," and highlights that "the City's officers consider tasing to be like a 'bee sting.'"  Id. at 4.  He also objects to the magistrate judge's dispensation in a footnote of his sought equitable and injunctive relief against the City.  Id. at 3.  As such, the court engages in de novo review of Woody's Monell claims against the City, focusing on his objection that he has produced evidence sufficient to survive defendants' motion for summary judgment on this claim—namely, that he has evidenced a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.  Id. at 3–4.

Woody alleges that the City maintained a custom, policy, and/or practice of condoning officers' use of tasers when a suspect or person actively resists arrest.  ECF No. 50 at 9–12.  Woody therefore alleges a theory of custom "by condonation."  Owens v. Balt. City State's Att'ys Off., 767 F.3d 379, 402 (4th Cir. 2014) (quoting Spell v. McDaniel, 824 F.2d 1380, 1390 (4th Cir. 1987)).  "Under this theory of liability, a city violates § 1983 if municipal policymakers fail 'to put a stop to or to correct a widespread pattern of unconstitutional conduct.'"  Id. (quoting Spell, 824 F.2d at 1389).

To prevail under such a theory, a plaintiff must point to a "persistent and widespread practice[] of municipal officials," the "duration and frequency" of which indicate that policymakers (1) had actual or constructive knowledge of the conduct and (2) failed to correct it due to their "deliberate indifference."  Spell, 824 F.2d at 1386–91

---

two reasons: (1) Woody has shown no irreparable injury meaning no real or immediate threat that he will be wronged again, and (2) the underlying Monell claim is without merit.  R&R at 19 n.10.

(alterations omitted). Both knowledge and indifference can be inferred from the "extent" of employees' misconduct. Id. at 1391. Sporadic or isolated violations of rights will not give rise to Monell liability; only "widespread or flagrant" violations will. Id. at 1387.

Woody essentially alleges that clear Fourth Circuit precedent establishes that "active resistance alone does not justify tasing," but nevertheless, officers within the Isle of Palms Police Department consistently opined that active resistance alone does justify tasing. ECF No. 50 at 9–13 (referencing Armstrong, 10 F.3d at 903). Yet Woody points to no incidents where a person was actively resisting arrest—but purportedly not posing an immediate threat to the officers—who the Isle of Palms Police Department tased to make the arrestee comply. See id. Woody's evidence comes from depositions with members of the Isle of Palms Police Department who, when presented with hypotheticals, appeared to believe that a taser was an appropriate use of force when a person was actively resisting arrest. Id.; see also id. at 30.

To be sure, the Fourth Circuit has unequivocally stated that use of a taser is only appropriate when a police officer "is confronted with an exigency that creates an immediate safety risk and that is reasonably likely to be cured by using the taser." Armstrong, 810 F.3d at 909. But the Fourth Circuit has long recognized that Monell and its progeny require the plaintiff to adequately plead and prove the existence of an official policy or custom that proximately caused a deprivation of rights. Walker v. Prince George's Cnty., 575 F.3d 426, 431 (4th Cir. 2009). The identification of a specific municipal policy or custom is a threshold requirement. See Semple v. City of Moundsville, 195 F.3d 708, 712 (4th Cir. 1999). The Fourth Circuit has recognized two basic theories for imposing liability on a municipality where "fault and causation cannot

23

be laid to a municipal policy itself unconstitutional." Spell, 824 F.2d at 1387–89.  First, a plaintiff can establish liability by demonstrating a deficient program of police training and supervision that results in a constitutional violation committed by untrained or improperly trained officers.  Id.  Second, a plaintiff can demonstrate an "irresponsible failure by municipal policymakers to put a stop to or correct a widespread patter of unconstitutional conduct by police officers of which the specific violation is simply an example."  Id.  The requirements for establishing either of these theories of liability based on police misconduct are necessarily stringent to avoid inadvertently attaching a form of vicarious liability to the municipality.  Id. at 1391; Carter, 164 F.3d at 218.  For example, the Fourth Circuit held a municipality liable under Monell in Spell when that plaintiff "introduced voluminous evidence both of prior incidents and of official encouragement of exactly the same constitutional injury that he has suffered."  Carter, 164 F.3d at 220 (citing Spell, 824 F.2d at 1391–94).  While establishing a custom or policy of failure to train normally requires a pattern of constitutional violations that demonstrated to the municipality the need for better or different training, the Supreme Court has suggested that liability of a municipality for failure to train could be based on a single incident where the need for training was obvious.  Canton v. Harris, 489 U.S. 378, 390 n.10 (1989).  However, "a single incident is almost never enough to warrant municipal liability."  Est. of Jones v. City of Martinsburg, 961 F.3d 661, 672 (4th Cir. 2020).

Woody has identified no other incidents and no official encouragement; rather, he rests his entire argument on his interviews with officers who responded to his hypothetical situations and answered whether those situations might warrant the use of a taser.  ECF No. 50 at 9–13, 30.  No reasonable jury could find the officers' opinions

constitute sufficient evidence of a constitutional violation such that Woody has met the high bar required for a <u>Monell</u> claim. The court agrees with the magistrate judge, adopts the R&R and grants summary judgment as to the § 1983 claim brought against the City. The court formally denies Woody's requested injunctive and equitable relief premised on his claim against the City because no reasonable jury could find for Woody on the underlying <u>Monell</u> claim.

Finally, the R&R recommended that the court find that Woody's excessive force claims against Phillips and Sgt. Storen in their official capacities are duplicative of Woody's <u>Monell</u> claim against the City. R&R at 6. Woody contends that because the magistrate judge also recommended that defendants' motion for summary judgment be granted as to Woody's <u>Monell</u> claim, then "the claim against the City cannot be duplicative of the official-capacity claims against the officers." ECF No. 60 at 1–2. In <u>Kentucky v. Graham</u>, the Supreme Court clarified that "official capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." 473 U.S. 159, 165 (1985). Thus, when Woody brings an official-capacity suit against Phillips and Sgt. Storen, he is, in essence, bringing a lawsuit against the entity of which the officers are agents. <u>See id.</u> At all times relevant, Phillips and Sgt. Storen were officers of the Isle of Palms Police Department. The Police Department was terminated as a defendant because defense counsel acknowledged the City was the proper entity to respond to claims brought against its local Police Department. ECF Nos. 27, 28. As such, the R&R properly concluded that a lawsuit brought against Phillips and Sgt. Storen in their official capacities is duplicative of the <u>Monell</u> claim against the City. <u>See</u> R&R at 6. Thus, even if the court were to allow the

25

claims against Phillips and Sgt. Storen in their official capacities go forward, Woody's claims would fail for the same reasons his claims against the City fail.

## IV.  CONCLUSION

For the foregoing reasons the court **ADOPTS** the report and recommendation and **GRANTS IN PART** and **DENIES IN PART** the motion for summary judgment.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**September 26, 2023
Charleston, South Carolina**